IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LUIS CARLOS HUNTE,

          Plaintiff,

v.                                                                 1:13-cv-02069-WSD

SCHNEIDER NATIONAL
CARRIERS, INC., et al.

          Defendants.

## OPINION AND ORDER

This matter is before the Court on the Defendants' Motion to Quash Plaintiff's Subpoena to Non-Party Custard Insurance Adjusters [79].[1]

## I.   BACKGROUND

On August 6, 2011, Plaintiff's vehicle collided with Defendant Linda Smith's ("Smith") tractor-trailer on I-85 near the metro Atlanta area. Second Am. Compl. at ¶ 14. Plaintiff alleges that Defendant Smith negligently crossed the dividing line on the highway, collided with Plaintiff's vehicle, caused Plaintiff to lose control of his vehicle, and forced him to exit the highway. Id. at ¶ 15.

---

[1] All the Defendants in this matter are represented by the same law firm. All of them have joined this Motion.

Defendant Smith is the owner and sole shareholder of Defendant Try God, Inc. ("Try God"). Id. at ¶ 23. Plaintiff alleges that Defendant Smith and Defendant Try God operated the tractor-trailer on behalf of Defendant Schneider National Carriers, Inc. ("Schneider National") pursuant to a contractual agreement that gave Schneider National "exclusive possession, control and use of" the tractor-trailer. Id. at ¶ 28. The Complaint alleges that Defendants INS Insurance, Inc. ("INS") and Liberty Mutual Fire Insurance, Inc. provide liability insurance to Schneider National, and thus are responsible for any judgment entered against Defendant Smith and Schneider National pursuant to O.C.G.A. § 46-7-12.[2] Id. at ¶¶ 44-46.

On November 25, 2013, Plaintiff filed a six (6) count Complaint against the Defendants seeking compensatory and punitive damages that he alleges he sustained for "severe and permanent injuries" when his vehicle collided with Defendant Smith's tractor-trailer. Id. at 18.

The matter before the Court concerns a Subpoena that Plaintiff issued to Custard Insurance Adjusters ("Custard").[3] On August 6, 2011, Defendant INS hired Custard to investigate the cause of the collision between Plaintiff's vehicle

---

[2] O.C.G.A. § 46-7-12 is a direct action statute that allows a plaintiff to join "the motor common or motor contract carrier and the insurance carrier" in actions related to vehicular accidents.

[3] Custard is not named as a Defendant in this action.

and Defendant Smith's tractor-trailer.  On behalf of INS, Custard photographed the scene of the accident, interviewed witnesses, and performed additional investigatory tasks.  Levash Aff. at ¶ 5.  On August 8, 2011, and September 1, 2011, Custard photographed the scene of the accident.  Id. at ¶ 6.  On August 18, 2011, and August 22, 2011, Custard interviewed Mary Eber and Bruce Baker.  These individuals witnessed the collision between Plaintiff's vehicle and Defendant Smith's tractor-trailer.

On October 30, 2013, Plaintiff subpoenaed Custard to produce "[a]ny and all statements taken on behalf of [Schneider National] in connection with an accident which occurred on August 8, 2011 involving Luis Hunte and Linda R. Dailey Smith, including, but not limited to statements of Bruce Baker and Mary Eber."  See Def.'s Ex. A at 2.  The Subpoena directed Custard to produce the documents at the law offices of Plaintiff's counsel, on or before "0:00 a.m." on November 19, 2013.

On November 19, 2013, Defendants moved to quash the Subpoena on the grounds that the witness statements of Baker and Eber are protected by the work-product doctrine.  Defendants claim that they have a right to withhold Eber's and Baker's written testimony about the accident because the statements were prepared by Custard for Defendant INS in anticipation of litigation.  In support of

this conclusory claim, the Defendants submitted an equally conclusory affidavit made by Jean Levash, a Senior Claims Adjuster employed by Defendant INS. Levash states that Defendant INS received notice of the accident at 6:20 p.m. on August 6, 2011.  Levash Aff. at ¶ 2.  According to Levash, Custard was hired to investigate the accident at approximately 7:00 p.m. on August 6, 2011.  Id. at ¶ 4. Levash claims that Defendant INS was "motivated to investigate further because of anticipated litigation against itself, its insured, [Standard National], and [Defendant Smith]." Id. at ¶ 3.  This claim is factually unsupported, and the affidavit does not explain why Defendant INS anticipated litigation within forty minutes of being informed of an accident that involved its insured.

Defendants also seek to quash the Subpoena because it contains typographical errors.  The accident occurred on August 6, 2011, but the Subpoena directs Custard to produce documents related to an accident that occurred on August 8, 2011.  The Subpoena also directs Custard to produce documents on or before November 19, 2013 at "0:00 a.m."  Defendants argue that these typographical errors require that the Subpoena should be quashed because it does not contain the correct date for the materials sought, or the correct time for production of the documents.

## II.   DISCUSSION

    A.   Legal Standard

        *1.   Motion to Quash Subpoena*

Federal Rule of Civil Procedure 45(c)(3)(A) provides that, upon timely motion, a court must quash or modify a subpoena that:

> (i) fails to allow a reasonable time to comply; . . .
>
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

Fed. R. Civ. Pro. 45(c)(3)(A).  In evaluating the reasonableness of a subpoena issued pursuant to Rule 45, the Court may evaluate what is required to be produced.  A subpoena scope is "not limited to matters that are admissible or relevant to the issues formulated in the case but extends to any non-privileged matter that is relevant to the claim or defense of any party in the pending action." Wright & Miller, Federal Practice and Procedure § 2459 (3d ed. 2010); see <u>Dering v. Service Experts Alliance LLC</u>, 1:06-cv-357-RWS, 2007 WL 4299968, at *2 (N.D. Ga. Dec. 6, 2007).

A court has options, other than to quash, when a subpoena is burdensome.  It may modify the subpoena to a scope that is reasonable or condition denial of the

5

motion to quash or modify on the person who requested the subpoena advancing the reasonable cost of producing the material sought.  Id.

### 2. *Work Product Doctrine*

A privilege against disclosure applies for attorney-work product.  See Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1421 (11th Cir. 1994).  Materials prepared by a party's representative, including his or her designated agent, to aid in anticipated or pending litigation will be protected from disclosure unless the privilege is waived or the party seeking discovery shows substantial need for the materials and cannot acquire a substantial equivalent without undue hardship.  See Fed. R. Evid. 502; Fed. R. Civ. P. 26(b)(3)(A); Hickman v. Taylor, 329 U.S. 495, 511 (1947).

The work-product doctrine "maintains a balanced and fair adversarial competition."  Otto v. Box USA Group, Inc., 177 F.R.D. 698, 700 (N.D. Ga. 1997) (quoting Hickman, 329 U.S. at 516).  For the work-product doctrine to apply, a party "must show that the documents were prepared for litigation purposes and not merely in the ordinary course of business."  St. Joe Co. v. Liberty Mut. Ins. Co., No. 3:05-cv-1266-J-25MCR, 2006 WL 3391208, at *8 (M.D. Fla. Nov. 22, 2006) (holding that a defendant insurance company failed to provide evidentiary proof of objective facts, via affidavits or deposition testimony, that reasonable anticipation

6

of litigation existed at the time the documents were produced or that the documents were prepared for the purpose of litigation).

The party invoking the protections provided by the work-product doctrine bears the burden of establishing its applicability.  See In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm. WD Energy Servs., 439 F.3d 740, 751 (D.C. Cir. 2006) ("It is well established that the proponent of a privilege bears the burden of demonstrating facts sufficient to establish the privilege's applicability.").

B. Analysis

"While much of the paperwork generated by insurance companies is prepared with an eye toward a possible legal dispute over a claim, it is important to distinguish between 'an investigative report developed in the ordinary course of business' as a precaution for the 'remote prospect of litigation' and materials prepared because 'some articulable claim, likely to lead to litigation . . . ha[s] arisen." Logan v. Commercial Union Ins. Co., 96 F.3d 971, 977 (7th Cir. 1996). "An insured seeking documents and reports in its insurers' claims files presents a special problem for the application of the work product rule because it is the very nature of an insurer's business to investigate and evaluate the merits of claims.  In such instances, most courts have held that documents constituting any part of a

7

factual inquiry into or evaluation of a claim, undertaken in order to arrive at a claim decision, are produced in the ordinary course of an insurer's business and, therefore, are not work product." Cutrale Citrus Juices USA, Inc. v. Zurich American Ins. Co., 5:03-cv-420-Oc-10GRJ, 2004 WL 5215191, at *2 (M.D. Fla. Sep. 10, 2004) (collecting cases); see also National Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 986 (4th Cir. 1992) (remanding to the district court to determine whether work product privilege applied, but questioning whether statements taken immediately after the accident in an investigatory capacity were prepared in anticipation of litigation or trial).

A significant number of federal courts have found that documents created after the date coverage is denied are entitled to a presumption of work-product. Id. Other courts consider whether the insurance company has referred the claim to a special investigations unit or hired lawyers in anticipation of litigation after suspicions arise regarding the insured's claim. See Cordell v. Pac. Indem. Co., 4:05-CV-167RLV, 2006 WL 3335128, at *3 (N.D. Ga. Nov. 13, 2006).

These factors are not present here. Defendant INS hired Custard to investigate the accident approximately forty minutes after the accident occurred on August 6, 2011. On August 8, 2011, and September 1, 2011, Custard photographed the scene of the accident. On August 18, 2011, and August 22,

2011, Custard interviewed Mary Eber and Bruce Baker and took their written statements.  It is undisputed that Defendant INS did not deny an insurance claim on or before the dates Custard interviewed Eber and Baker regarding the accident.  It is also undisputed that Defendants did not retain counsel or refer an insurance claim to a special investigations unit in anticipation of litigation.  The facts here show that the documents Plaintiff seeks were created in the early stages of investigating the accident to determine facts that might be important in later evaluating a claim that might arise from the accident.  Documents created by an insurance company in the early stages of the investigation do not qualify as work-product.  See Cordell, 2006 WL 3335128, at *2 ("In the early stages of claims investigation, management is primarily concerned not with the contingency of litigation, but with deciding whether to resist the claim, to reimburse the insured and seek subrogation of the insured's claim against the third party, or to reimburse the insured and forget about the claim thereafter.").

      The Defendants have failed to support their claim that Custard's work was performed in anticipation of litigation.  "The party claiming the privilege must provide the court with underlying facts demonstrating the existence of the privilege, which may be accomplished by affidavit."  Civil Constr. Co. v. Hanover Ins. Co., 6:13-mc-42-Orl-18TBS, 2013 WL 1810817, at *3 (M.D. Fla. April 29,

2013). "Unless the affidavit is precise to bring the document within the rule, the Court has no basis on which to weigh the applicability of the claim of privilege. An improperly asserted claim of privilege is no claim at all." Id. (citations omitted).

The Defendants' assertion of work-product to prevent the Plaintiff from discovering witness statements taken immediately after the accident is not grounds to quash the Subpoena. The affidavit submitted by Jean Levash does not contain a factual basis for asserting the work-product privilege, and it is facially self-serving to support avoiding the production of required discovery. It does not contain any factual basis to invoke the attorney work-product privilege on the grounds that Defendant INS anticipated litigation when Custard investigated the accident. The affidavit shows only that Custard was hired in the early stages of the investigation to gather information—a responsibility Defendants had to ordinarily conduct their business. Defendants' Motion to Quash the Subpoena on the grounds that it seeks attorney work-product is denied.

The Defendants' Motion to Quash the Subpoena on the grounds that it contains typographical errors also is denied. A minor typographical error does not constitute grounds to quash an otherwise valid Subpoena. See Armor Screen Corp. v. Storm Catcher, Inc., No. 07-81091-Civ, 2009 WL 455428, at *2 (S.D. Fla. Feb.

23, 2009).  The Court has the inherent power to order a party to modify and reissue a Subpoena with the correct dates and time for production.  See <u>American Modern Select Corp. v. Sutherland</u>, No. CV-12-S-1681-NW, 2013 WL 1767827, at *3 (M.D. Ala. April 18, 2013); <u>United States v. Mariano</u>, CR 12-061-01-ML, 2013 WL 866907, at *3 (D.R.I. Mar. 7, 2013).  That is the better course here.

### III. CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that the Defendants' Motion to Quash the Subpoena issued to Custard is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff shall, on or before August 22, 2014, modify the Subpoena to provide a specific time and return date for production of the documents, and correct all typographical errors, including the correct date of the accident.

**SO ORDERED** this 13th day of August 2014.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE